# RIZZO POOL COMPANY *v.* DANIEL DEL GROSSO ET AL.
## (15511)

Borden, Berdon, Katz, Palmer and Peters, Js.

Argued December 5, 1996—officially released February 18, 1997

David L. Gussak, for the appellant (plaintiff).

Shelley M. Weiss, for the appellees (defendants).

*Opinion*

KATZ, J. The sole issue in this appeal is whether, following this court's order (1) reversing the judgment of the trial court in favor of the plaintiff on its complaint in the underlying action and (2) remanding the case with direction to render judgment thereon in favor of the defendants, the trial court properly awarded attorney's fees to the defendants pursuant to General Statutes § 42-150bb.[1] We affirm the judgment of the trial court.

---

[1] General Statutes § 42-150bb provides: "Attorney's fees in action based on consumer contract or lease. Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. Except as hereinafter provided, the size of the attorney's fee awarded to the consumer shall be based as far as practicable upon the terms governing the size of the fee for the commercial party. No attorney's

Because the scope of the issues on this appeal is limited, we need not repeat the extensive factual summary of the underlying action set forth in *Rizzo Pool Co. v. Del Grosso*, 232 Conn. 666, 657 A.2d 1087 (1995). In that decision, this court held that a contract between the plaintiff, Rizzo Pool Company, and the defendants, Daniel and Jo-Ann Del Grosso, to install a swimming pool at the defendants' home was subject to the requirements of the Home Improvement Act (HIA)[2] and the Home Solicitation Sales Act (HSSA).[3] Accordingly, we concluded that the trial court had improperly precluded the defendants from establishing their special statutory defenses to the plaintiff's claim of breach of contract. We further concluded that, because the requirements of the HIA are mandatory and must be strictly construed, the plaintiff's undisputed violation of the HIA rendered the contracts unenforceable. Finally, we declared that because the plaintiff had not performed any of the home improvement services contemplated by the contract, the plaintiff could not establish bad faith repudiation of the contract by the defendants or claim restitutionary relief based on a theory of quasi-contract, quantum meruit or unjust enrichment. Accordingly, we concluded that the plaintiff could not recover and that the defendants were entitled to judgment on the complaint.

---

fee shall be awarded to a commercial party who is represented by its salaried employee. In any action in which the consumer is entitled to an attorney's fee under this section and in which the commercial party is represented by its salaried employee, the attorney's fee awarded to the consumer shall be in a reasonable amount regardless of the size of the fee provided in the contract or lease for either party. For the purposes of this section, 'commercial party' means the seller, creditor, lessor or assignee of any of them, and 'consumer' means the buyer, debtor, lessee or personal representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes."

[2] General Statutes § 20-418 et seq.

[3] General Statutes § 42-134a et seq.

Following the order by this court that the case be "remanded with direction to render judgment thereon for the defendants," the defendants moved in the trial court for attorney's fees pursuant to § 42-150bb. The plaintiff objected, arguing that the defendants had not preserved the issue of attorney's fees in their initial appeal.[4] In addition, the plaintiff claimed that because we had not ordered further proceedings as part of the rescript, the trial court lacked authority to award attorney's fees on remand. The plaintiff further argued that because the contract at issue did not fall within the definition of a consumer contract found in General Statutes § 42-151 (b),[5] the defendants were not entitled to attorney's fees under § 42-150bb. Finally, the plaintiff argued that, should the trial court nevertheless award attorney's fees, those fees must be subject to the limitations on any such award under General Statutes § 42-150aa.[6] The trial court rejected the plaintiff's arguments

[4] The only request by the defendants for attorney's fees was made in connection with their counterclaim alleging fraud and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., in which they asserted § 42-150bb in their prayer for relief.

[5] General Statutes § 42-151 (b) provides: "Consumer contract. A written agreement is a 'consumer contract,' if:

"(1) A consumer enters into the agreement primarily for personal, family or household purposes; and

"(2) The agreement is one in which the consumer: (A) Borrows up to twenty-five thousand dollars or receives up to twenty-five thousand dollars in credit from a person who lends money or extends credit in the ordinary course of business; or (B) agrees to pay up to twenty-five thousand dollars to buy or lease personal property or services from a person who is acting in the ordinary course of business; or (C) leases any residential dwelling."

[6] General Statutes § 42-150aa provides: "Attorney's fees limited in actions on consumer contracts or leases. (a) The holder of any contract or lease entered into on or after October 1, 1979, the subject of which is money, property or services intended to be used primarily for personal, family or household purposes and which contains a provision for payment of attorney's fees of a creditor, seller or lessor, shall not receive, claim or collect any payment for attorney's fees (1) for an attorney who is a salaried employee of such holder or (2) prior to the commencement of a lawsuit.

"(b) If a lawsuit in which money damages are claimed is commenced by an attorney who is not a salaried employee of the holder of a contract or

and, following an evidentiary hearing, awarded attorney's fees of $6400 to Daniel Del Grosso and $7500 to Jo-Ann Del Grosso. This appeal followed.[7] We affirm the judgment of the trial court.

## I

Although the plaintiff made a number of claims before the trial court, the claims are, for all intents and purposes, simply subparts of a single issue—whether the trial court improperly awarded attorney's fees to the defendants.

We begin with the plaintiff's argument that no procedural basis existed for the trial court's award of attorney's fees. Specifically, the plaintiff asserts that the defendants failed to preserve the claim for attorney's fees at trial in accordance with Practice Book §§ 285A[8]

lease subject to the provisions of this section, such holder may receive or collect attorney's fees, if not otherwise prohibited by law, of not more than fifteen per cent of the amount of any judgment which is entered."

[7] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). While the case was pending before the Appellate Court, the defendants moved to dismiss the appeal as untimely pursuant to Practice Book § 4009, claiming that the appeal should have been taken from the granting of the defendants' motion for attorney's fees on December 12, 1995, rather than from the determination of the amount of those fees on February 5, 1996. The Appellate Court denied the motion to dismiss without prejudice to raising the issue at oral argument. Although the parties briefed this issue, the defendants withdrew the claim at oral argument, based upon this court's decision in *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988).

[8] Practice Book § 285A provides: "The parties may, as of right, or shall, if the court so orders, file, at such time as the court shall determine, written trial briefs discussing the issues in the case and the factual or legal basis upon which they ought to be resolved.

"If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim."

and 4185,[9] and before this court as part of their original appeal. Furthermore, in the absence of any order for further proceedings by this court, the plaintiff claims that the trial court was limited to the remand order.

It is uncontested that the defendants had not requested attorney's fees in the trial court. It is also undisputed that in their initial appeal the defendants requested only that the plaintiff's verdict be set aside and that this court either order a new trial or direct a verdict in their favor based upon the violation of the HIA. Although the defendants concede that the first time they made the request for attorney's fees was following this court's remand to the trial court, they nevertheless argue that the trial court properly entertained their motion. We agree with the defendants.

### A

We first address the plaintiff's claim of waiver. Section 42-150bb provides for an award of attorney's fees to a consumer who has *successfully* defended an action. Because in the original proceedings the defendants had been prohibited from presenting any evidence of the plaintiff's violations of the HIA and the HSSA, the statutes upon which they were relying to bring them within § 42-150bb, they never had the opportunity during the trial to seek attorney's fees. Moreover, because the defendants had not been *successful*, they had neither reason nor opportunity to seek such an award at that time. We do not generally require parties to engage in futile conduct. See *Vachon* v. *Tomascak*, 155 Conn. 52, 57, 230 A.2d 5 (1967). Consequently, because the defendants were not in a position to raise the issue of

---

[9] Practice Book § 4185, which has since been repealed, effective September 3, 1996, provided in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was raised distinctly at the trial or arose subsequent to the trial. . . ." This language has been incorporated into Practice Book § 4061.

attorney's fees until they succeeded on appeal, we fail to see how they were in a position to have waived their claim. Similarly, there was no reason for the defendants to have raised the issue of an award of attorney's fees before this court. This is not an instance of a party seeking to raise an issue after an appeal that could have been raised in the earlier appeal. See *Hartford National Bank & Trust Co.* v. *Tucker*, 195 Conn. 218, 222, 487 A.2d 528, cert. denied, 474 U.S. 845, 106 S. Ct. 135, 88 L. Ed. 2d 111 (1985). Moreover, because the defendants had no basis upon which to request an award by the trial court, there was no record upon which to seek review by this court.

Nevertheless, the plaintiff maintains that the defendants could have done one of two things: (1) prior to trial, the defendants could have notified the plaintiff that they would seek an award of attorney's fees should they prevail in defending against the plaintiff's claim; or (2) on appeal, they could have asked this court, in the event they succeeded on appeal, to direct the trial court on remand to award attorney's fees. The plaintiff cites no specific authority to support the assertion that either of these procedures is required, and we have found none. Indeed, unlike the plaintiff's claim or the defendants' counterclaim, to which a request for relief properly attaches, there is no procedural mechanism by which the defendants could have alerted the trial court or the plaintiff to a future conditional request for fees.

As to the plaintiff's second proposal, although the defendants could have included a footnote in their brief alerting this court to their interest in obtaining attorney's fees upon our remand, there is nothing to suggest that the rescript would have been any different. For the reasons set forth in part I B of this opinion, under the circumstances of this case the order to render judgment for the defendants properly left the issue of all

postjudgment proceedings to the trial court, which had the evidence it needed to make the initial determination that attorney's fees were proper. Cf. *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 730–31, 652 A.2d 496 (1995) (holding trial court could not entertain request for attorney's fees when consumer contract upon which claim was based had not been introduced into evidence).

B

The plaintiff next argues that the terms of our rescript deprived the trial court of the authority to award attorney's fees, despite the fact that they are available as a matter of law. We are not persuaded.

"Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted *in light of the opinion*. . . . This is the guiding principle that the trial court must observe. . . . Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed. The trial court should examine the mandate and *the opinion of the reviewing court and proceed in conformity with the views expressed therein.*" (Emphasis in original; internal quotation marks omitted.) *Halpern* v. *Board of Education*, 231 Conn. 308, 311, 649 A.2d 534 (1994).

We have also cautioned, however, that our remand orders should not be construed "so narrowly as to prohibit a trial court from considering matters relevant to

the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Citation omitted; internal quotation marks omitted.) Id., 313.

The relevant circumstances in this case necessarily include the fact that the attorney's fees statute, § 42-150bb, became applicable to the defendants only after the trial court had rendered judgment in their favor, postappeal. Consequently, the trial court was required to look carefully at the words of the appellate mandate in conjunction with the language of the statute in question. Under § 42-150bb, the court has no latitude to deny such an award to a consumer who successfully defends an action brought against him by a commercial party. Therefore, despite the absence of a specific mandate in the remand order, attorney's fees were available to the defendants by operation of law.[10]

We expressly reject the plaintiff's implied suggestion that unless we specifically set forth, as part of the rescript, all statutorily mandated postjudgment awards, such awards are precluded. Indeed, adoption of the plaintiff's argument would have ramifications far beyond this case. In this regard, cases involving other postjudgment awards are instructive. For example, we note that costs are statutorily mandated as well; General Statutes § 52-257; and although the award of costs can

---

[10] When this court held that the HIA was applicable to the contract at issue, it could have remanded the case for a new trial on whether the contract complied with the requirements of the HIA. That action would have allowed the defendants, after successfully defending against the action, to assert the protections afforded under the HIA and to request an award of attorney's fees. This court chose, however, to examine the matter further and concluded as a matter of law that the contract did not comply with the HIA. *Rizzo Pool Co.* v. *Del Grosso*, supra, 232 Conn. 681–82. Thus, according to the plaintiff's logic, by prevailing against the plaintiff on appeal, the defendants should get less despite having won more.

be more ministerial than the award of attorney's fees,[11] for purposes of this issue, the guiding principles behind costs and attorney's fees are sufficiently similar. The plaintiff has not pointed to any cases, and our research has revealed none, in which costs were specifically awarded to the prevailing party as part of the rescript. Indeed, despite the lack of a specific direction in the rescript, it is undisputed that, generally, costs have been available and have been awarded to the prevailing party by operation of such mandatory provisions for decades.

In this regard, *Cassidy* v. *Waterbury*, 130 Conn. 237, 33 A.2d 142 (1943), is instructive. In *Cassidy*, this court ordered the trial court to set aside the judgment and to render judgment for the defendant. Id., 246. Thereafter, the plaintiff moved to reargue the appeal so as to request the court to amend its rescript to state specifically that no costs would be taxed in favor of the now prevailing party. Id. In declining to do so, the court relied upon the usual practice of allowing costs to be

---

[11] General Statutes § 52-257 and Practice Book § 412 establish the general procedure for the taxation of costs in cases in which money damages have been awarded. The taxation of costs in civil cases begins with action by the court clerk and either party may appeal from such taxation to the court. The clerk in essence acts as an agent of the court, and the clerk's action becomes part of the trial court's judgment in the matter when there has been no resulting appeal. This general procedure applies in any civil action in which there is a prevailing party in whose favor a decision or verdict is rendered, money damages awarded and a judgment rendered. Where equitable relief is demanded, the taxing of costs is solely within the discretion of the trial court. See General Statutes § 52-257 (e) and Practice Book § 422.

General Statutes § 52-81, which mandates the taxation of costs upon withdrawal of an action, has been interpreted so as to require the party against whom an action has been withdrawn to follow the procedures of Practice Book § 412. "While the clerk has no discretion to order the taxation of the costs, the amount of the costs might well be contested at a hearing before the clerk. An appeal from that decision would lie in the trial court. . . . Should the clerk refuse to tax *any* costs pursuant to . . . § 52-81, the remedy is to petition to the court to order the clerk to perform an act as required by law." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Triangle Contractors, Inc.* v. *Young*, 20 Conn. App. 218, 222, 565 A.2d 262 (1989).

determined at the trial court level, concluding that certain costs were justified although they had not been mentioned in the original remand order. Id. In the absence of any suggestion by the plaintiff in *Cassidy* that the usual rules as to taxation of costs should not follow upon the disposition of the appeal, the court declined to amend the rescript, out of concern that inviting postappeal motions to reargue would have the deleterious effect of delaying the publication of our decisions. Id.

Similarly, in *Mazzotta* v. *Bornstein*, 105 Conn. 242, 244, 135 A. 38 (1926), the propriety of granting then mandatory statutory interest following an appeal was confirmed, despite the absence of any express mandate in the rescript. In that case, in which the amount of the plaintiff's judgment had been increased on appeal, the court found that the trial court had, by calculating the interest on that additional amount using an incorrect date, exceeded the scope of the remand. Id., 244–45. In the course of its decision, the court noted that, "[h]ad the judgment . . . been affirmed, interest would have run, *as of course*, from the date of that judgment . . . . While the rescript *did not specify* that the judgment as directed bore interest from the date of the judgment appealed from, it can bear no other interpretation . . . ."[12] (Citation omitted; emphasis added.) Id., 244. As both *Cassidy* and *Mazzotta* illustrate, when costs and interest are statutorily mandated, and the incident of a judgment operates as a matter of law, this court has not required either to be specifically awarded in

_____

[12] Prior to July of 1983, pursuant to statute, interest was an automatic incident of a judgment. General Statutes (Rev. to 1983) § 52-349 provided in pertinent part that after judgment was rendered upon a verdict, after denial of a motion to set aside, or upon affirmation of that ruling on appeal, "legal interest upon the amount of the verdict from the time it was rendered shall be collected on the execution upon the judgment." That statute was repealed by No. 83-581 of the 1983 Public Acts, effective July 14, 1983.

the remand order for the prevailing party to claim and receive them.

We know of no reason why in this case it was improper for the trial court to follow standard operating procedure in connection with postjudgment awards generally, and § 42-150bb specifically, in light of the defendants' successful defense. Moreover, the plaintiff has failed to furnish us with any reasonable explanation as to how, in this case, adherence to standard procedure following our disposition of the appeal has worked a surprise or an injustice. On the record before us, there is no sufficiently compelling reason for the trial court to have deviated from established procedure. Accordingly, we conclude that the trial court properly read the rescript in *Rizzo Pool Co.* v. *Del Grosso,* supra, 232 Conn. 689, and proceeded in conformity with our expressed intent.

## II

In addition to the claims of preclusion, the plaintiff asserts that because the contract at issue was not a consumer contract under § 42-151 (b), the trial court improperly relied on § 42-150bb as a basis upon which to award attorney's fees. The defendants argue that the plaintiff's reliance on § 42-151 is misplaced and that because the contract at issue satisfied the definition of consumer contract under § 42-150bb, the award of attorney's fees as provided therein was proper. We agree with the defendants.

The plaintiff first asserts that by originally permitting the jury to award the plaintiff attorney's fees well in excess of 15 percent of the amount of the judgment; see General Statutes § 42-150aa;[13] the trial court implicitly had determined that the contract at issue was not

---

[13] See footnote 6.

a consumer contract,[14] a finding that remained undisturbed on appeal. We disagree with this characterization of the record.

As one of their claims in the first appeal, the defendants challenged the award of attorney's fees to the plaintiff because the amount awarded was greater than that authorized by § 42-150aa. Because we concluded that the defendants were entitled to a directed verdict on the plaintiff's breach of contract claim, we had no reason to address that claim. Nevertheless, we did determine that the contract at issue was governed by the HIA, which governs contracts between an "owner" and a "contractor" relating to "home improvements," which are defined as work performed on any land or building that "is used or designed to be used as a private residence [or] dwelling place . . . ." General Statutes § 20-419 (4). "Owner" is defined as "a person who owns or resides in a private residence . . . ." General Statutes § 20-419 (6). We also held that the contract for the defendants' swimming pool fell within the parameters of the HSSA, which defines a home solicitation sale as the sale of "consumer goods or services . . . ." General Statutes § 42-134a (a). That statute further defines consumer goods and services as "goods or services purchased . . . primarily for personal, family, or household purposes . . . ." General Statutes § 42-134a (b). Because both of these acts deal exclusively with consumer contracts, the trial court, in awarding attorney's fees, properly treated the contract as a consumer contract for purposes of the HIA and the HSSA.

The plaintiff further argues that, even if we assume that the contract at issue is a consumer contract for purposes of the HIA and the HSSA, it is not a consumer

---

[14] "The jury returned a verdict for the plaintiff on its complaint in the total amount of $26,292.80, awarding the plaintiff $7562 in damages, $3250.80 in interest, and $15,480 in attorney's fees." *Rizzo Pool Co.* v. *Del Grosso*, supra, 232 Conn. 674–75.

contract for purposes of an award under § 42-150bb. Rather, according to the plaintiff, the trial court should have confined itself to chapter 742 of the General Statutes and applied the definition of consumer contract contained in § 42-151. We disagree.

Chapter 741d of the General Statutes, entitled "Attorneys' Fee Clauses," contains only two sections, §§ 42-150aa and 42-150bb, both of which are specifically designated as treating attorney's fees in actions on consumer contracts. Both sections provide a definition of "consumer contract" as one in which "the money, property or service that is the subject of the transaction is primarily for personal, family or household purposes." Notably, § 42-150bb contains no specific monetary limit on its applicability. Indeed, aside from the proviso that attorney's fees should be based as far as practicable on the terms governing the commercial party's fees, § 42-150bb contains no further qualification. Judging from its terms, the focus of chapter 741d is on the amount of attorney's fees that may be awarded, depending upon whether the claimant is the consumer or the commercial party. See part III of this opinion.

Nevertheless, the plaintiff contends that the trial court should have disregarded the provision for attorney's fees in this chapter in favor of chapter 742, which, despite its broad title, "Consumer Contracts," deals solely with the scope and enforcement of the plain language standard for consumer contracts.[15] Section 42-

---

[15] Speaking on behalf of No. 79-532 of the 1979 Public Acts, entitled "An Act Concerning Plain Language in Consumer Contracts," Representative Robert F. Frankel stated: "This bill that appears before you is the second component of the plain language package. As you may recall, two weeks ago we took the first component, the insurance section, and that has passed this House as well as the Senate. This component as I indicated at that time, deals with other consumer contracts other than insurance. It deals with consumer contracts, which are defined in the bill of amounts of $25,000 or less, consumers contracts defined to be those involving personal, family or household purposes." 22 H.R. Proc., Pt. 23, 1979 Sess., p. 7943.

151 (b) provides a definition of a "consumer contract," to be applied under that chapter, which the defendants in this case admittedly cannot satisfy,[16] and does not mention the issue of attorney's fees.

Section 42-150bb provides its own definition of the type of contract for which attorney's fees may be recovered. It contains no reference to the following chapter and no suggestion that § 42-151 should apply. As indicated, the first sentence of § 42-151 expressly provides that the definitions provided "shall apply *in this chapter*," and does not purport to provide a global definition of "consumer contracts." (Emphasis added.) We find no reason under the facts and circumstances of this case to look beyond § 42-150bb to define its scope or to limit its application.

### III

The plaintiff's last challenge in this appeal concerns the amount of attorney's fees awarded by the trial court on remand pursuant to § 42-150bb. In particular, the plaintiff argues that the trial court ignored specific statutory restrictions on the amount of such an award. We disagree.

We begin with the basic principle behind the "American rule." "The general rule of law known as the 'American rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. See *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Fleischmann Distilling Corporation* v. *Maier Brewing Co.*, 386 U.S. 714, 717, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967). This rule is generally followed throughout the country. See 20 Am. Jur. 2d, Costs § 72. Connecticut

---

[16] Because the contract at issue was for $37,810, it could not be a "consumer contract" within the meaning of § 42-151 (b). See footnote 5.

adheres to the American rule. See, e.g., *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 14, 513 A.2d 1218 (1986); *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, 193 Conn. 135, 140, 475 A.2d 305 (1984); *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 297, 472 A.2d 306 (1984); *Litton Industries Credit Corporation* v. *Catanuto*, 175 Conn. 69, 75, 394 A.2d 191 (1978); *Central New Haven Development Corporation* v. *Potpourri, Inc.*, 39 Conn. Sup. 132, 134, 471 A.2d 681 (1983)." *Marsh, Day & Calhoun* v. *Solomon*, 204 Conn. 639, 652, 529 A.2d 702 (1987). There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs; see, e.g., *Storm Associates, Inc.* v. *Baumgold*, 186 Conn. 237, 245, 440 A.2d 306 (1982); or a statute may confer such rights. See, e.g., General Statutes § 52-240a (attorney's fees may be awarded in product liability action).

In the present action, the statute pursuant to which the defendants asserted their claim for attorney's fees is § 42-150bb. In considering this issue, the determinative question is the proper interpretation of the provision of § 42-150bb limiting a consumer's award of attorney's fees to "the terms governing the size of the fee for the commercial party." The plaintiff contends that this provision incorporates § 42-150aa[17] by reference, and therefore limits attorney's fees awarded to the holder of a contract to 15 percent of the amount of the judgment. The defendants, however, argue that a consumer's award of attorney's fees under § 42-150bb is limited not by the provisions of § 42-150aa, but by the terms of the consumer contract. We agree with the defendants.

"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . It is an axiom of statutory construction that legislative

[17] See footnote 6.

intent is to be determined by an analysis of the language actually used in the legislation. . . . [W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Citations omitted; internal quotation marks omitted.) *Dos Santos* v. *F. D. Rich Construction Co.*, 233 Conn. 14, 20, 658 A.2d 83 (1995). "When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve." *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 341, 612 A.2d 1203 (1992).

Looking to the plain language of § 42-150bb, we are persuaded that the phrase, "the terms governing the size of the fee for the commercial party," relates to the parties' contract, and not to § 42-150aa. Had the legislature intended to limit a consumer's award of attorney's fees to 15 percent, it would have incorporated the provisions of § 42-150aa by expressly providing "as provided in section 42-150aa." Moreover, reading § 42-150bb in context, as we must, it is clear that the phrase, "the terms governing the size of the fee for the commercial party," relates to "the contract or lease" as provided in the immediately preceding sentence in the statute.

Furthermore, even if there were ambiguity in the plain language of § 42-150bb, our conclusion that the phrase refers to the parties' contract is buttressed by the statute's legislative history. In 1979, the Connecticut legislature enacted No. 79-453 of the 1979 Public Acts, entitled "An Act Concerning Attorney's Fee Clauses in Consumer Contracts." The original language of Substitute Senate Bill No. 1559, prior to its subsequent amendment, makes it clear that the phrase, "the terms governing the size of the fee for the commercial party," relates to the attorney's fee provisions of the consumer contract. That bill provided: "Except as hereinafter pro-

vided, the size of the attorney's fee awarded to the consumer shall be based as far as practicable upon the terms governing the size of the fee for the commercial party, and *any term in such contract or lease for recovery of an attorney's fee* by the consumer on terms less favorable than those for the commercial party shall be void and shall constitute an unfair or deceptive act or practice in violation of chapter 735a of the General Statutes." (Emphasis added.) Indeed, speaking on behalf of the original bill, Senator Alfred Santaniello, Jr., remarked: "This bill makes attorney's fee clauses reciprocal. For example, a clause for the benefit of the creditor will automatically allow the attorney's fees to the prevailing debtor who successfully prosecutes or defends an action or counterclaim based upon the contract or lease." 22 S. Proc., Pt. 8, 1979 Sess., p. 2542.

Representative Richard D. Tulisano proposed House Amendment A, which amended Substitute House Bill No. 1559 by deleting the language that provided for unfair or deceptive business practice liability, so that the statute would not require input from the department of consumer protection. 22 H.R. Proc., Pt. 22, 1979 Sess., p. 7487. In the process, the amendment inadvertently deleted the clear reference that "the terms governing the size of the fee for the commercial party" related to the attorney's fee provisions in the contract or lease. Nevertheless, Representative Tulisano expressly stated that the statute was now "self-enforcing" in that contractual attorney's fee provisions would be reciprocal. He stated: "[T]he legislation before us today provides [for] the first time the ability for consumers in this state to obtain attorney's fees, of reasonable amount, as a result of defending or prosecuting any action in which the commercial party has provided for attorney's fees for their own behalf. What this does is give some equity to the situation. At the present time, many form contracts include attorney's fees provisions for the com-

mercial party, and even though . . . that party may be wrong and a consumer successfully defends an action against him, or her, they would not be entitled to receive attorney's fees in defending that action. This will put some equity in the situation to the same extent that any commercial party will receive." Id., pp. 7487, 7489–90.

Furthermore, during the subsequent consideration of Representative Tulisano's amendment in the Senate, Senator Salvatore C. DePiano stated: "House Amendment Schedule 'A' would, in effect, eliminate a provision of the bill which would have made it an unfair or deceptive trade practice for a commercial party to have included a clause in a contract or lease which provides for the recovery of attorney's fees by a consumer on terms less favorable than those for the commercial party. . . . This bill would require that in a specified situation attorney's fees be awarded to a consumer who successfully brings or defends an action based upon a contract or lease whenever such contract or lease provides for the attorney's fees of a commercial party . . . ." 22 S. Proc., Pt. 13, 1979 Sess., pp. 4274–75. Indeed, at no time during the debates with respect to § 42-150bb did the legislators make a single reference to § 42-150aa. Accordingly, we conclude that the legislature clearly intended the phrase, "the terms governing the size of the fee for the commercial party," to refer to the attorney's fees provisions in the parties' contract, and not to § 42-150aa.[18]

[18] We note that, were we to accept the plaintiff's argument that the award of attorney's fees is limited by § 42-150aa to 15 percent of the judgment, the defendants would receive no attorney's fees because they were not awarded a judgment. Surely, the legislature did not intend such an irrational result. "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *Ciarelli* v. *Commercial Union Ins. Cos.*, 234 Conn. 807, 812, 663 A.2d 377 (1995).

Although we read the language in § 42-150bb to refer to the attorney's fees provision in the parties' contract, we are not unmindful that when contracts are limited by statutory provisions, those provisions are generally

Having reached this conclusion, we turn to the language of the parties' contract. The relevant provision in the agreement provides that in the event of cancellation of the contract by the defendants, the plaintiff would be entitled to liquidated damages in the amount of 20 percent of the contract price, plus costs of collection and reasonable attorney's fees. Where a contract expressly provides for the recovery of attorney's fees, an award under such a clause requires an evidentiary showing of reasonableness. *Bizzoco* v. *Chinitz*, 193 Conn. 304, 310, 476 A.2d 572 (1984); *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 680, 443 A.2d 486 (1982). A trial court may rely on its own general knowledge of the trial itself to supply evidence in support of an award of attorney's fees. *Bizzoco* v. *Chinitz*, supra, 310. Because the trial court is in a more advantageous position to evaluate the services of counsel than a reviewing court, "[t]he amount of attorney's fees to be awarded

considered to be incorporated therein as a matter of law. See *Sanghavi* v. *Paul Revere Life Ins. Co.*, 214 Conn. 303, 307, 572 A.2d 307 (1990); *Nationwide Ins. Co.* v. *Gode*, 187 Conn. 386, 399, 446 A.2d 1059 (1982), overruled in part on other grounds, *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 36 n.6, 594 A.2d 977 (1991); *Safeco Ins. Co.* v. *Vetre*, 174 Conn. 329, 332-33, 387 A.2d 539 (1978). Thus, whenever there is an attorney's fees clause in the commercial party's contract, that clause is subject to § 42-150aa, and the contract must be read as incorporating that provision's 15 percent limitation. Therefore, when a consumer prevails on a counterclaim, his attorney's fees, like those of the successful contractor, would be limited to the 15 percent provision of § 42-150aa. This reading would be consistent with both the language of § 42-150bb ("the size of the attorney's fee awarded to the consumer [would] be based as far as practicable upon the terms governing the size of the fee for the commercial party") and the purpose of the statute, namely, to make the "attorney's fees clauses reciprocal." 22 S. Proc., Pt. 8, 1979 Sess., p. 2542, remarks of Senator Alfred Santaniello, Jr.

In the case in which the consumer prevails on a counterclaim *and* successfully defends against a claim by the contractor, the 15 percent provision of § 42-150aa will prevail to control the fees generated by the counterclaim, while "reasonable" will be the operative term controlling attorney's fees generated in connection with the defense to the contractor's action. See footnote 19. How the trial court allocates the consumer's attorney's fees between those two aspects of the case will necessarily call for the exercise of the court's sound discretion.

rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion." *Link* v. *Shelton*, 186 Conn. 623, 629, 443 A.2d 902 (1982). After an evidentiary hearing, the trial court awarded the defendants reasonable attorney's fees in the total amount of $13,900.[19] Having carefully reviewed the record, we cannot conclude that the trial court abused its discretion in arriving at this figure.[20]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[19] We further recognize that, in some instances, the parties' contract may provide for attorney's fees based upon 15 percent of the recovery. In these circumstances, should the consumer prevail in defending an action brought by the commercial party, the consumer would receive pursuant to the contractual terms 15 percent of nothing—which would, of course, be nothing. Accordingly, an award of attorney's fees based upon the terms of the contract would not be practicable. See General Statutes § 42-150bb ("[e]xcept as hereinafter provided, the size of the attorney's fee awarded to the consumer shall be based *as far as practicable* upon the terms governing the size of the fee for the commercial party" [emphasis added]). Therefore, notwithstanding the contractual terms that would effectively provide the consumer with no attorney's fees, the consumer nevertheless would be entitled to an award of reasonable attorney's fees. See *Crest Plumbing & Heating Co.* v. *DiLoreto*, 12 Conn. App. 468, 480, 531 A.2d 177 (1987) (construing contractual attorney's fees provision as award for "reasonable attorney's fees" because "reasonable" is implied by law even when absent in contractual provision).

[20] Because the decision to award appellate attorney's fees "is discretionary and a matter appropriately determined by the trial court"; *Neiditz* v. *Housing Authority*, 42 Conn. App. 409, 413, 679 A.2d 987 (1996); we do not address the defendants' claim for appellate attorney's fees.